SIDNEY A. EISEMANN ET AL., APPELLEES, V. LARY ANDERSON ET AL., APPELLANTS.

FILED MARCH 27, 1923. No. 22284.

1. **Fraud:** EXPRESSIONS OF OPINION. An expression of advice, opinion or judgment made by one soliciting a consignment of wool to be sold on commission by his principal at a distant market, to the effect that the wool would sell if shipped to his principal, and scoured, for $2,000 more than the shippers allege had been offered for it in the condition it then was, will not support an action, or counterclaim by the shippers against the principal for damages based upon the fact that the wool, when scoured and sold, did not realize as much as the alleged former offer.

2. ———: ———. Such expressions of opinion as to the proceeds of a sale to be made at a distant market at a future time, being to the knowledge of both speaker and hearer, based upon a future condition liable to be affected by many factors, and being made merely to induce a consignment for sale on commission, are merely, "trade talk," and are not to be relied upon as a statement of fact for which the principal is bound to respond in damages if the wool actually sold for less than the amount stated.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Magney & Magney,* for appellants.

*Charles Battelle, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY, DEAN and ALDRICH, JJ., RAPER, District Judge.

LETTON, J.

Plaintiffs are wool commission brokers. The petition alleges that defendants consigned to plaintiffs a car-load of wool and drew upon them for the sum of $10,880.40, which sum was paid, and the consignment accepted;

that defendants ordered plaintiffs to scour the wool and sell to the best advantage, which was done; that the net value of the wool was $1,531.09 less than the amount of the draft plaintiffs had paid on account of it, for which sum plaintiffs pray judgment. An exhibit was attached showing in detail the items of credit and debit.

An answer and counterclaim was filed. The answer was in effect a general denial, but the counterclaim substantially alleges that in May, 1919, one Ballard was the agent of plaintiffs for the soliciting of consignments of wool to plaintiffs, and as such agent he examined the sheep of defendant, and the wool which was then being clipped; that defendants at that time had an offer of 45 cents a pound for all the wool just as it came from the sheep, which would have netted them $16,385.40, all of which Ballard knew; that he "was consulted by defendants in his capacity as a wool expert and as the representative of the Eisemann Brothers Wool House;" that he made false and fraudulent representations as follows:

"The price of 45 cents a pound is much too low for your wool and I would not accept it. You should consign it to my house and instruct them to scour it before selling. While it is dirty and muddy, it will not scour out much over 60 per cent., but even if it should scour 75 per cent., and I never saw any wool, no matter how dirty, scour out that much, still it will net you as scoured wool at least $2,000 more on the car-load than you are offered now. If you sell it for 45 cents you are just throwing $2,000 away."

That defendants had no experience in growing wool, or in scouring it, and relied on him as a wool expert; that they stated to Ballard "that they did not care to speculate or take chances with their wool, but desired to be sure of their money for it; that Ballard then repeated his assurance that the very least they could realize in excess of the offer of 45 cents a pound would

be $2,000, and that it might run much higher than that. Whereupon relying on the statements and representations so made by the said Ballard as a wool expert and as the duly authorized agent of plaintiffs, defendants consigned their wool to plaintiffs and drew on plaintiffs for $10,880.40, which was paid by plaintiffs, and which was the only money ever received by defendants for their 36,412 pounds of wool."

It is further alleged that defendants would have accepted the offer of 45 cents a pound but for the false and fraudulent representations and statements of Ballard, and because of their reliance upon the same they have been damaged the difference between the amount of the offer and the amount paid by plaintiffs, being the sum of $5,505, for which sum they pray judgment.

A general demurrer to the counterclaim was sustained. Defendants elected to stand upon the counterclaim, which was thereupon dismissed, and defendants appeal.

Do the facts pleaded in the counterclaim constitute a cause of action for damages for fraud and deceit? In the first place the plaintiffs were not endeavoring to purchase the wool. The relation created between the plaintiffs and defendants was that of commission agent and principal. There is no complaint of any fraud or false dealing thereafter, or failure to properly account for the wool which was consigned to plaintiffs for sale. Ballard was merely an agent to procure consignments of wool to be sold for the benefit of the consignor. The statement of fact made by Ballard as to the wool, in order to procure the consignment, was, "While it is dirty and muddy, it will not scour out much over 60 per cent., but even if it should scour 75 per cent. * * * it will net you as scoured wool at least $2,000 more on the car-load than you are offered now." There is no allegation that the statement was false or untrue with respect to the percentage that the wool would "scour out," and we cannot presume that the statement

was false in this respect. It furnishes no ground for complaint.

The other allegation relied upon is that Ballard said the wool "will net you as scoured wool at least $2,000 more on the car-load than you are offered now." This is not a representation of an existing fact, but is an expression of opinion that at some future time the wool would sell upon the market for $2,000 more than the prices offered. Under some circumstances, where special trust or confidence is placed in a seller, on account of the purchaser's ignorance and inability to learn the truth without examination, the purchaser is entitled to rely on the statements of the seller. This principle can hardly apply to a case where there was no confidential or trust relation, and where both parties knew that the article solicited was to be consigned for sale upon a distant public market whose prices varied and fluctuated with demand and supply. The fact that the wool market is controlled and affected by supply and demand and that it is affected by world-wide conditions must have been in the minds of both the consignor and the agent of the consignee. There was no guaranty or promise made that the wool would be sold at any definite price, and there were no instructions given that it should not be sold for less than a definite price. The consignors took the risk, relying on the opinion of Ballard as to what the wool would sell for in the future.

A representation, or statement, which merely gives the opinion, the judgment, or expectations of the maker as to the price that property will sell for in the future, even though erroneous, is not actionable, because a person is not justified in relying upon the same. General assertions as to value, the price which has been offered for property, or that it is desirable, or that it will sell for a greater price in the future, are so commonly made and often so much exaggerated that they are known as "dealer's talk," and they are not to be relied

upon as statements of fact. The expression of an opinion as to a price which is liable to be fixed in a future and fluctuating market has never, so far as we can learn, been held to form a basis for action for fraudulent representations. If it were, the courts would be clogged with actions respecting mistaken opinions as to the future price of grain, or of goods and merchandise sold upon the open market.

AFFIRMED.